INHABITANTS OF ELLSWORTH *versus* INHABITANTS OF GOULDSBORO'.

To establish a settlement by the sixth mode, it must be shown that the pauper had his home five successive years on the actual territory within the legal limits of the town.

The provision in R. S., c. 24, § 22, that "persons living in places not incorporated and needing relief, are under the care of the overseers of the adjoining town," does not give to such persons a legal settlement in such adjoining town, so that when they remove to a distant town and there fall into distress, they become chargeable to the adjoining town.

ON REPORT.

ASSUMPSIT for supplies furnished to certain paupers whose settlement was alleged to be in the defendant town.

The only question was that of settlement.

The pauper, called by the plaintiffs, testified :— " I was born in Plantation No. 7, in Hancock county, in 1819, where my father was born and lived until about 14 years ago. Resided in No. 7 until eight years ago. Removed to Ellsworth in 1862, where I and family have resided ever since. Up

to year 1844, father and I had been taxed and we paid taxes and voted in Gouldsborough. It was supposed that father and I lived within the limits of Gouldsborough until 1844, when No. 7 was organized for election purposes, when the line was run fixing our house in No. 7, since which time we have neither paid taxes nor voted in Gouldsborough."

After testimony was all in, the case was continued on report, with the agreement that, if the action could not be maintained, plaintiffs were to become nonsuit; otherwise case to stand for trial.

*A. Wiswell*, for the plaintiffs.

*E. & F. Hale*, for the defendants.

KENT, J.—The pauper in question, and family, fell into distress in Ellsworth, and their wants were supplied as required by law. This suit is brought to recover the amount from Gouldsboro', on the ground that, by statute provisions, that town is liable therefor. The first question is whether the father ever acquired a legal settlement in Gouldsboro', by five years residence in that town. One of the modes of acquiring a settlement is by a residence of five years "*in* any town in this State." It is clear that neither this pauper nor his father ever did in fact live or have their homes in the defendant town, although, for a series of years before 1844, they were taxed and voted in that town, under the erroneous belief, or assumption, that the houses in which they dwelt were in fact within the limits of Gouldsboro'.

But the residence must be *in* the town, not *outside* of it. The belief of the assessors, or other town officers, that the line of the town included a certain lot, could not change the real line, and make the residents on it inhabitants, dwelling and having their home *in*, i. e. *on*, the territory within the true boundaries. The lines enclosing the town are fixed by the act of incorporation, and cannot be altered, except by the same authority. A five years residence to fix a settlement, must be shown to have been on the actual territory, within the legal limits of the town.

Another ground for recovery is suggested by the plaintiffs' counsel, viz. : — that, as by § 22, c. 24, R. S., " persons living in places not incorporated and needing relief, are under the care of the overseers of the adjacent town, where they are liable to be taxed;" whenever persons, who have resided formerly in such place, not incorporated, fall into distress in some third town, and are there relieved, that such third town may recover of the adjacent incorporated town for such supplies.

We have seen that such claim cannot be sustained on the ground that such persons had a legal settlement by residence in that town. The provision, that persons in distress are under the care of the overseers of an adjacent town, does not make such persons the legal paupers of such town. On the contrary, the same section gives the right to recover, for supplies furnished such persons, from the town in which they have their legal settlement, if any such town can be found. If not, then the adjacent town must bear the expense, as it must in all other cases where the pauper falls into distress, in their town, having no legal settlement therein, and none in any other town in the State. It seems to have been the intention of the Legislature to put the unfortunate residents on a plantation, where no provision exists for their relief, under the care of the overseers of an adjoining town, in the same manner and to the same extent as is required in cases of persons falling into distress but having no legal settlement in their town; and to make it the duty of the overseers to provide for all cases of distress, within their town or in such adjacent plantation as is named in the statute, whether they have a settlement in any town or not. But such care and oversight as the law requires of them, does not give to the persons receiving it a legal settlement in their town, so that when they remove from the plantation to a distant town, and there fall into distress, they become chargeable to the adjacent town. They have no legal settlement in such town, and there is no statute provision making that town liable for any relief furnished such

persons after they have removed from the plantation. The last proposition is all that the case requires us to determine on this point. We are aware that the law, as it now stands on the statute book, (in § 22,) is not free from difficulties in construing and applying it, and may call for further Legislative action to make it just and practicable in its operation. The object undoubtedly is to secure relief and needed supplies to persons in distress, in places not incorporated as towns, where there are no overseers of the poor and no corporation bound by law to furnish such aid. Without some provision there might, and doubtless would be many cases of extreme suffering. On the other hand, it seems unequal and unjust to compel an adjacent town to be at the whole expense of such supplies, where the pauper has no legal settlement in the State. There would seem to be no satisfactory reason for imposing this burden on one town rather than another. The number of such cases is not large, and perhaps the most equitable provision would be, for the State to assume the charge.

It is perhaps not unreasonable to believe that the overseers of adjacent towns will be somewhat unwilling to assume the burden where there is no prospect of remuneration from any source, and, in some cases at least, refuse aid, when needed to prevent immediate and severe suffering, under the construction which they may adopt, that the statute, putting the paupers under their "care," does not, *in terms*, impose any obligation to furnish supplies, except in cases where remuneration is secured, or as they in their discretion may determine. Under the present statute, it may be difficult to point out any mode by which overseers may be compelled to act in favor of non-resident paupers.

Questions may also arise as to *which* of the adjacent towns is intended. The liability to taxation may be questionable, or indefinite, or not clearly fixed, and the towns may be disputing as to their respective duties and obligations, whilst the poor paupers are perishing for lack of food. Perhaps a more definite and satisfactory designation would be that

of the *oldest* adjacent town, or the town nearest the place of the pauper's residence when he fell into distress, or the town first applied to for relief.* But the case before us is free from these doubts.          *Plaintiffs nonsuit.*

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and DANFORTH, JJ., concurred.

---

* See statue 1868, chapter 219.